Our first case on the call this morning is Agenda No. 6, No. 129-676, People of the City of Illinois v. Matthew Sloan. Counsel for the Appellant, you may proceed. May I please support, Counsel? I'm Assistant Attorney General Nick Moeller on behalf of the people. At the heart of the question a judge decides when looking at what jury instructions to give to the jury is, will this instruction help the jury? And there's two ways to look at that question. How does this help the jury? The first is to say, is this instruction ultimately relevant to the question the jury has been asked to answer? And second, is there some evidence in the record to support the instruction? Now, before turning to the answers to those questions, it's important to point out that the standard of review in this case, when dealing with the judge's decision on instructions, is an abuse of discretion, which means it's not enough that a different judge might feel an instruction should have been given. It must be that the judge's decision not to give the instruction was so arbitrary or fanciful that no reasonable judge could have given or not given that instruction. And a reasonable person could have agreed with the trial court's judgment in this case because the duty to retreat instruction was neither relevant to the question before the jury nor supported by the facts of the case. And it was not relevant because it was not the type of instruction you give in every case. Your instructions like elements of the crime, the burden of proof. In fact, the comments to the pattern instruction say it's not given in every situation. So we have to look at, well, what type of situation is it meant for? And the pattern instruction on the duty to retreat is at heart a corrective instruction. It's there to correct misapprehensions by the jury about a duty to retreat. And that arises in largely two different types of instances. One, when the companion pattern instruction is given, which explains when there does exist a duty to retreat, which was not given in this case. And two, if there has been some suggestion or hint at such a duty by the State or other members of the trial proceedings, which also did not happen. The State... Counsel, what about the line of questioning by the State that went along the lines of, did you lock the door? You know, why did you, you know, announce the person had to leave? Those questions that were mentioned in the brief, did that in any way suggest that the defendant had a duty to retreat? No, Your Honor, and I think it's important to look at that in the context of the case. Because first, what has to be realized is what was put before the jury. And it's not a typical murder case where we're asking, did this defendant commit these acts? That was all agreed by the parties. Everyone understood the defendant had committed the acts necessary for murder. He had shot his brother in the face. His brother had died because of that. The only question left to the jury was why did the defendant do that? Did he do it because he had a fear, a belief in the necessity of self-defense? And if he did, was that reasonable or unreasonable? So the trial... How does the fight prior to the defendant going in his home, the fight in the driveway, how does that play into this? Largely it plays into the question of whether you believe the defendant or not in the sense of once we get to harmless error. The fight really serves to answer the question of what facts in the record support this instruction. When we look at it, you look at the instruction, there was some argument in the brief over who was the aggressor or are we talking about who threw the first punch, who provoked. The language in the instruction and the language in the statute the instruction is based on is who provoked. We're not asking like the appellate court did in the trial court below of who threw the first punch. We're asking who picked the fight. And it is undisputed in the record because it comes from defendant's testimony that this fight started when after there had been this argument in the car, he gets out of the car and immediately puts his things on the hood of his car, which he admits and says that's how you challenge someone to a fight. That's the usual way. So what started this fight, what picked this fight was defendant getting out of the car and figuratively saying I want to fight by challenging his brother, putting his stuff on the car. And then his brother responds, well, if you want to fight, I'm here, which is a response to the challenge. And then the fight happens. And do we have two separate incidents? I mean, obviously that fight ended, right? Yes, Your Honor. And then the defendant retreated into or went into his home. So should we be looking at the fight before at all? It largely has to be seen for defendant's defense to work. It largely has to be seen as one event. And that's because the only reason it makes sense that defendant is acting in self-defense and can use lethal force in responding is he has to have some reason to believe his life is in danger of a great bodily harm. If it's separate from the fight, that doesn't work. But wasn't there testimony that there were still guns in the trunk of the car that they had used earlier and they're like celebratory, you know, they were shooting, it was Fourth of July, that the brother after, you know, the first fight or first, if you think it's one whole event, whatever, if it's phase one of the fight occurs and the defendant goes into the house, I mean, we understand that there's still weapons and some things available to the victim outside of the house, correct? Everyone agrees yes, there were guns in the car outside. And that does make a role in the harmless error analysis because it goes to whether the defendant actually had a belief that his life was in danger. That's not part of the duty to retreat instruction. If we're looking at the duty to retreat instruction, the facts we're asking to support it is who provokes the fight, who picks the fight, because the defendant, in order to get this instruction, has to have some evidence that he didn't pick the fight, that he didn't provoke. Because if he did provoke, the facts don't support giving the instruction. And the only evidence on who picked the fight is defendant's own testimony that I challenged. But if you consider that there's two separate events, when he goes into his home, then is it an act of provocation to be followed in? Well, that's the problem with self-defense. Because if it is two events and he no longer picked a fight, then there is no fight picked in the second instance. All you have is a man walking into his parent's home towards someone. There's no fight been picked. There's no aggression to respond to. So his self-defense claim really only applies if we look at this as an extension of the fight. Because I'll point out, there is no right to use legal force against someone just because they entered your home, even unwelcomed in a home. So there still has to be some belief that his life is in danger for some reason. Counsel, given the fact that there were guns in the car and after the defendant entered his home and he claims that his brother was coming towards him very quickly, didn't say whether he saw a gun or not, couldn't that be, I mean, that's a factual determination, isn't it? Whether or not he felt that his life was in danger because there was no reason for the brother to come into the home in that way after they had been fighting outside. That still goes to whether he believes his life is in danger, but it's still tied to the fight. Because someone having a gun in their trunk does not really come into play unless you tie it to the fight of, oh, maybe he went and got the gun. And as I'll address more when I go to the harmless errors section, we know from the record the defendant didn't believe he had gone to get the gun. What about the defendant telling his brother to get out? And he went to the defendant's bedroom. It's not just entering the house. Let's tie it all together and say it's just one incident, this initial fight, and then that breaks up and his brother enters his home, he enters his bedroom, he's told to get out. That doesn't put in the mind of the defendant some apprehension that he may be under threat? That's certainly the defendant's argument. But addressing first in the lens of this instruction, that doesn't work to get the instruction because then we are either looking at a fight the defendant provoked. And even if it isn't, if we say he came into the room, he's now left the fight. He's now in a room he can no longer retreat from. And so the question of did he have to retreat before he did retreat becomes irrelevant. And there's no reason to instruct the jury, well, he had no duty to retreat, if there's no way the jury is going to hold this duty against him because he did retreat. Aren't these all facts that the jury is supposed to determine? They're ultimately coming to the verdict. But the trial court is required to make a factual determination before giving an instruction. But aren't there facts in the record to support giving the instruction? No, Your Honor. My argument is there is not because the defendant had to have some evidence to show he didn't provoke the fight. And the only evidence on who provoked the fight was the defendant's own words that he had challenged his brother to a fight by putting his items on the hood of the car in the usual way. But then he went into the house. He retreated. He went into his bedroom. He told his brother to get out. And if we believe that in that instance, Your Honor, there's no reason to give the instruction anymore because the jury is not going to be holding an obligation to retreat against him because the evidence says he did walk away. I have a question, counsel. Did you say if we believe? Is that what you just said? I apologize, Your Honor. But isn't that for the jury to determine, counsel? The trial court in an instruction situation has to make the first factual determination based on the findings of the record. And it's not a credibility determination in the sense that he can say whether the trial court or whether the defendant is lying or not in that instance. The reason I'm bringing it up is to say any way you look at this evidence, you either have the defendant started the fight, the fight continued, and so he did have a duty to retreat under the law even though the jury has not instructed that, or if we take the other version of events where it's two separate events, whether he provoked it or not, the facts show he walked away from the fight. And if the defendant did retreat and no longer had an opportunity to retreat, there is no reason to tell the jury he had no duty to retreat before he left because they won't be holding any such duty against him because he did that. So the facts here are all sorts of issues about who's the initial aggressor, the proportionality of response, all those kinds of ideas, and I don't think there's any argument about all the other instructions that the court gave to the jury, right, in terms of what is self-defense, what's a failed self-defense. All those instructions were given to the jury, and the jury came to a verdict, and I think there's no dispute here that all of those instructions were correct. Am I right about that? Yes, Your Honor, and if I could use that to turn to the question of whether if there was error, it's harmless or not. If we look— I have one more question for you. Yes, ma'am. So, of course, what it boils down to is the fact that the defendant ended up shooting his brother. And so does the duty to retreat instruction at all speak to whether or not it was appropriate, the response was appropriate to shoot him? Does it even go to that, or is that— does another instruction that was given go to whether or not he had the authority or the right to shoot? If I understand correctly, Your Honor, the other instructions go to when self-defense can apply. The duty to retreat instruction purely is talking about a separate section of the statutes dealing with self-defense. It has nothing to do with what defendant believes. It's not subjective in any way. It's an objective question of someone who is provoked, picked a fight, cannot use self-defense unless they take several other actions. And so all of these questions of what did defendant believe really don't go to the jury instruction because that's about what objective actions happened and were taken. When we get into the question of what did he actually believe, that's a matter of harmlessness because when we do that, we see that even if this instruction would have been given, nothing would have changed because there is nothing the instruction would have fixed and because there's overwhelming evidence of guilt in this case. And if we look to why would this instruction not fix anything, first, it's because there was no problem here. Even if the jury had come up on its own with some view of there was this need to retreat, defendant had. And so had they been given the instruction that says this is the—you don't have a duty to retreat, jury would say, okay, but he did, so this instruction does nothing for me. When we look at the other instructions given as Justice Tice, your question, got towards, defendant was not given all of the typical elements of self-defense. And that's important in this case because what he was not—what the jury was not instructed on was that in Illinois, an initial aggressor cannot use self-defense. And that is the gateway instruction that gets us into these questions of when is there a duty to retreat or not. So because they were never given the instruction that tells them here are the instances where there is a duty to retreat, them being—whether or not they're then given, but here's the instance where you don't have that duty, becomes harmless because they were never told about such a duty in the first place. There's nothing the state did. There's nothing the court did. Because even if we go back to why didn't you lock the door, that was not in the context of you should have locked the door and got away. That was you're saying you did this all out of fear. We don't believe you because a person who's afraid doesn't turn their back to a fight and walk slowly away. A person who's afraid doesn't go through the door where they've just been attacked but leave it open. That's not a question of retreat. That's a question of do we believe you that you were actually afraid rather than angry. And that was the heart of this case. And if we turn to the evidence, it was overwhelming against the defendant. Again, this all came down to the question of self-defense or second-degree murder based on unreasonable self-defense. That all comes down to does the jury believe defendant when he said, I didn't know it was my brother. Sure, I spent all morning with my brother. My brother was up with me until his wife arrived in the car to pick us up. Then suddenly my brother disappeared. And even though he's now only a few feet away from me, I don't remember that this man I was talking through the whole day up to this point. Suddenly he's not my brother. When we get home and we're fighting in the ground, as he said, fisticuffs, and our faces are inches away, I don't recognize my brother, though I still recognize my sister. I'm so drunk that I can't recognize him like this, but still I can walk except for one stumble before the fight. I can fight enough that I walk away with barely a scratch. I can go into the house, work the door, get to my room, take a gun that's not ready to fire, and I can put that gun ready to fire and then fire it effectively at someone. And I can remember everything that helps my self-defense claim, but I am so drunk that one part escaped me, that one part being my brother's face who I've known for decades. So it all comes down to this, was it his brother or not? Because if you don't believe it's not his brother, the self-defense falls apart. And it becomes even more clear that the jury would never have believed him on this because when you get to the police interview, which is given to the jury, or shown to the jury, the defendant supposedly doesn't know it was his brother who shot, and yet he's the first one who brings it up in the police interview. There is no reason if defendant believed he had shot someone else for him to be the first one to say, I wouldn't commit malice murder against my brother. And when it's brought up to him that, hey, your whole story of I didn't know it was my brother, then how come you told the police I wouldn't have done that to my brother? His answer, the best he could give the jury, was I have no answer for that. So whether the jury gets their instruction about duty to retreat or not, if they get it, they still have this question of, well, he had a duty to retreat, or he had no duty to retreat, he retreated anyway, how does that affect anything? It's instruction not about subjective things, about what is going on in defendant's mind. It's about objective actions he took in a case that all that was at issue was the subjective actions. Did they believe defendant? And the overwhelming evidence, including defendant's own words, showed he was not telling the truth. Thus, any error would have been harmless because even with the instruction, the jury's verdict would have been the same. And unless there are any further questions, we would ask that this court reverse the judgment of the appellate court and remand it for consideration of defendant's remaining claims. Thank you. Thank you very much. Counsel for the appellate. Good morning, Your Honors and Counsel. Gilbert Lentz from the Office of the State Appellate Defender on behalf of Matthew Sloan. Your Honors, this court should affirm the judgment of the appellate court because the trial court abused its discretion in denying Matthew's request for 25.09X and the state could not prove that that error was harmless. Alternatively, this court should affirm the appellate court's finding of error and remand to that court with instructions to perform a proper prejudice analysis, possibly also with consideration of Matthew's other claims of serious error if necessary. Turning to the question of instructional error, Your Honors, this was a self-defense case. Self-defense cases, in a self-defense case, the judge had already decided that there was some evidence supporting the defendant's statements and testimony that he believed he was acting in self-defense. In this case, the only evidence that could have supported that belief was what happened after Matthew retreated from the fight, entered his own home, and closed the door. It was David's conduct at that point that set issue. I think there's a fundamental disagreement between the parties here about what the role of this instruction is. The 25.09X, I think it's good to think of this instruction alongside its twin instruction, 25.09. These are instructions that are designed to help the jury determine whether the defendant actually subjectively believes self-defense was necessary and, if so, whether that was reasonable. So are you suggesting this instruction, the no duty retreat instruction, should be given in every self-defense case? No, Your Honor. It may be given in many self-defense cases, but this instruction is not about who picked the fight. The self-defense instructions and imperfect self-defense instructions are designed to help the jury decide who is the aggressor. But really, the question is self-defense. What I want to get at, too, is not so much – we understand that this is real stuff. There's a lot of, as we all understand the instructions, attempting to help the jury work through all of these really complex ideas. But as you point out, this is a very specific instruction. And in my mind, it usually would be an instruction that comes up when the defense raises this idea of – or when the – excuse me – when the State raises the idea, well, this person should have retreated. And then in response, the defense would say, well, no, there's no duty to leave the scene, even if there's all these other things going on. Are there facts in this case that make that an issue? I mean, there was a fight. Yes. He retreated. He went in his home. No one is suggesting he had to do anything other than – I mean, he was in his home, in his own room. Where was – did the State ever suggest that in analyzing all these other factors of self-defense that he had a duty to leave? I don't understand the fact piece that triggers this specific instruction. Well, I think in response, Your Honor, it's important to remember that the duty to retreat, as we call it, is – could encompass any number of actions. It's really a duty to avoid the danger that the defendant perceives. Does he have such a duty? And the State, through its questioning of Matthew and then explicitly in closing argument, told the jury or applied to the jury through questioning and then told the jury explicitly in closing argument, you should not believe that Matthew subjectively believes self-defense was necessary because he did not take action to avoid the danger he perceived. So you're saying the evidence that was presented about questions about did you lock the door, et cetera, the State says that was just all about challenging his credibility. You're saying that if we look really closely at the closing argument, that's not how the State was using it? They were raising the issue that he had a duty to retreat and therefore the jury should be instructed that they should not consider that? Is that what you're saying? The State absolutely did that, Your Honor. They didn't use the phrase duty to retreat. And the instruction doesn't use the phrase duty to retreat. So it's a broader concept than the legal duty to retreat. The State was saying to the jury, Matthew, here, look at Matthew. He could have done all these things to avoid – if he really perceived the danger, he could have done all these things to avoid the danger. He didn't do them. And based on that, it's not even about whether Matthew's belief was reasonable. You should not believe that he thought self-defense was necessary at all. The State was saying because he didn't try to avoid the danger, his conduct could only have consisted of first-degree murder. And the State put that squarely in front of the jury. And because the State did that, that triggered the possibility to select to request 25.09X. Defense counsel realized that this instruction was crucial to Matthew's defense at that point, made that request, and then there's one more question that's at issue. The question is whether did Matthew do anything to provoke David's conduct after Matthew retreated from the fight and entered the house. There was no evidence Matthew provoked that conduct. With those two facts, the State pursuing this issue to the jury and Matthew not provoking anything David did after Matthew retreated from the fight, that triggered the necessity for 25.09X, and the court should have granted that instruction. The duty – the response is that there was no duty to retreat. Is that triggered by what happened in the incident outside of the home where he did retreat, where he did go in the home? Is that where the facts are based that arise to giving this instruction? As you said, not every case, not every self-defense case will this instruction be appropriate. So where are the facts that support it in this case? The fight out in front of the home where he did retreat or where? I think the State might be overemphasizing the issue of whether this is a single incident or separate incidents. Illinois law, even if – and I don't agree that the evidence shows this clearly – but even if Matthew was the aggressor in the driveway, Illinois – the State, as it says in its brief, acknowledges that Matthew completely retreated from that fight. He entered his own home and closed the door. Illinois law allows someone in that position, even if they were the aggressor in the initial confrontation, allows that person to assert self-defense under certain circumstances. And those circumstances could have been present here if the jury agreed with Matthew's testimony and agreed that David's conduct was sufficiently threatening. That conduct consisted only of David's actions after Matthew closed the door to his house. So what were those actions? Matthew went to his bedroom. Thirty to sixty seconds later, he heard the person who had just fought in the driveway enter through the closed door without warning, rapidly approach his bedroom. Matthew knew that that person had access to guns in the car and had time to get one, and then the person stood in the doorway and blocked, as the State acknowledges, any possible escape. Those are sufficient facts to put the question to the jury of whether – that self-defense was necessary. But they were missing the instruction that would correct the State's assertion in closing argument that Matthew couldn't believe self-defense was necessary because he didn't try to avoid the danger. Under the facts of this case, Matthew had no such duty to try to avoid the danger, and the jury didn't receive the instruction that would have helped them on the law on that issue. So do you believe that you were required to show that he was not the initial aggressor if the instruction was required? I would say, Your Honor, this question is not about helping the jury decide who was the initial aggressor. It's about assessing – Well, I'm talking about, you know, the instruction says, a person who has not initially provoked the use of force against himself has no duty to attempt to escape the danger before using force against the aggressor. So would you have been required to show that he was not the initial aggressor? That Matthew was not? Yes. Yes. To get this – so when we're talking about 25.09 or 25.099, we're talking about a subset of self-defense cases where one of the parties, could be either party, brings up the issue of whether the defendant could have or should have tried to avoid the danger. 0.9 and 0.9X are not about helping the jury decide who was the initial aggressor. There's already some evidence that judges agreed to support the defendant's assertion of self-defense. The focus on these instructions is about the decedent's conduct that the defendant's claiming was threatening. And it's whether the defendant provoked the decedent's conduct that the defendant claimed was threatening. That's the question that these instructions answer. If there was no evidence that the defendant provoked the decedent's conduct that he claimed was threatening, then he had no duty to retreat. Conversely, when the defendant claims he had no duty to retreat, as happens in some cases, but the state has some evidence that he actually provoked the decedent's conduct that he claimed was threatening, then he did have a duty to retreat. He did have a duty to try to avoid the danger. And the state should get 25.09 in such a case as it did in Floyd. Do you agree with opposing counsel as to what the standard of review is with this instruction not being given? That it's an abuse of discretion standard? Yes. And the trial court abused its discretion in denying the oppressed in this case because the state squarely put the question of whether Matthew should have tried to avoid the danger in front of the jury, and there was no evidence that Matthew provoked the conduct of David that Matthew claimed was threatening. Those two facts made 25.09 necessary in this case, and it wouldn't have confused the jury. It would have helped the jury because the state implied directly, told the jury directly, that when they were assessing Matthew's subjective mental state, they shouldn't believe that he believed self-defense was necessary because he didn't try to avoid the danger. Turning to the prejudice analysis, Your Honors, the state cannot prove that the trial court's error in refusing this instruction was harmless. When this court does a harmless error analysis, it looks to several possible questions of the record. One of those is whether the state could prove that no other outcome could have been reached had the jury been properly instructed. That is a question that concerns the nature of the error in light of the evidence of the case. This error spoke directly to the crucial issue before the jury because the state, again, the state argued explicitly to the jury that they should find that Matthew's conduct could only have been first-degree murder, not second-degree. He could not have subjectively believed self-defense was necessary because he did not take action to avoid the danger, and this instruction would have clarified that exact legal issue. In any event, the state's evidence was not so overwhelming that no reasonable juror could have found that imperfect self-defense in this case. When Matthew decided to put second-degree murder before the jury, he was taking on the burden of if this jury found that every element of first-degree murder was proven by the state, he then had a burden by preponderance of the evidence to show that he subjectively believed he was acting in self-defense. That was an assessment by the jury of his credibility about his subjective mental state, which is essentially an inherently closed question, and then his statements about his subjective mental state were supported by corroborating facts. There's no doubt that Matthew was intoxicated that day. Whether you believe he had 18 drinks, we do know he was drinking all day. We know his brother had a .259 VHC. Both men were intoxicated. That affected the judgment of both men, and that was an issue that the jury was allowed to consider in determining Matthew's mental state. And then we have the undisputed facts, as the state recites in its brief. Matthew retreated from the fight, entered his own home, closed the door. 30 to 90 seconds later, the man he had just fought entered the house, having had time to grab a gun from the car. Matthew told him to get out. He didn't. He blocked any possible escape that Matthew had. At minimum, a reasonable juror under those circumstances could have found that Matthew subjectively believed he was acting in self-defense, even if that was unreasonable. If this court agrees, then this error is not harmless, and this court should affirm the appellate court's finding of instructional error and remand for a new trial based on that harmless error analysis. And finally, alternatively, Your Honors, because the appellate court did not conduct a proper harmless error analysis and both parties agreed, this court certainly has the authority to, if it agrees instructional error occurred, to affirm that finding and then remand to that court with instructions to do the harmless error analysis in the first instance, possibly in consideration of Matthew's other claims of serious trial error. If there are no further questions, we ask that you affirm the judgment of the appellate court and remand for a new trial. Thank you very much. Counsel on the bottom. My apologies. I started with pointing out that jury instructions are about helping the jury. So when we're asking should this instruction have been given, would it help the jury to take an issue that clearly is complex enough that defense and the state have very different views of it, the appellate court and the trial court don't agree, and we've gone on for about 40 minutes about how complex this issue. So would it help the jury to inject this complicated, apparently, issue into a case where it didn't matter because defendant did retreat? It didn't help them. It wouldn't have helped them. And at the very least, a reasonable person, another reasonable judge, could have thought the same thing the trial court did, and therefore it wasn't an abuse of discretion. But turning to what the instruction is, I'll admit I've been saying duty to retreat, which is not what the instruction says. But the instruction doesn't say take action to avoid the danger either. It says escape the danger. That's what the instruction says. And to me, to the state, that sounds a lot more like did they try to retreat? Did they try to leave? We could also go directly to some of the questions asked by the state. Why didn't you lock the door? I mean, when we're talking about, you know, it's not, you know, the word isn't retreat that's used, but it's to escape the danger. Which I think the plain reading of that, what the jury would have is to escape the danger means to leave. That's not the locking of the door. That's when he left the fight. That's when he kept going. The locking of the door is not the act of escaping. It's preventing, which is something different. But even if we go to that, taking what appears to be the defense view, again, this is purely two separated things. If that is the case and we don't look at the defendant instigating the fight in the first instance, well, then the question about why didn't you lock your door, that came before any aggression that's apparently a part of this case. The entry of David happened. So if the question about why didn't you lock the door, how can that be about escaping or avoiding the danger of David coming towards you when it hasn't happened yet? In the instance, the way they're portraying it, there hasn't yet been an aggression. So any question of what the defendant did before that aggression is shown really is irrelevant if we're taking things in the way the self-defense claim has put it. I'd also like to touch on the question of guns because it came up a lot. It came up in trial in the statement he had access to guns. Defendant on the stand arguing for his freedom, saying, I did this out of self-defense. Not once said, I thought he had a gun. I thought he might have had a gun. I was afraid he would shoot me. He said he had access to guns. And the reason he said that is because he knew he had already told police, I knew he didn't have a gun. And to be clear, the police said, was he armed? And the defendant said, no, but he entered my house. The problem with that, as I said it before, is someone entering your house does not allow you to use deadly force without the belief that they are going to do you some form of deadly harm or grievous bodily harm. He knew he didn't have a gun. He looked at them. His explanation for why he didn't, his explanation was always he had access to guns. The first thing he told the cops is, well, did you check his trunk? But clearly, defendant wasn't, or David wasn't at his trunk. He was in the house. Defendant knew he didn't have a gun because that's what he told police. So this issue of maybe there were guns is a complete red herring to get over the fact that a person entering their parent's home is not enough for a self-defense claim. Finally, I'd like to address the subject of remand. This claim was fully decided by the appellate court. They got it wrong. It has been fully briefed before this court. There is no reason to decide half of the issue today and then send it back for further consideration. For that reason, this court should overturn the appellate court's decision and send it back for remand claims that weren't considered. Unless there are further questions. Thank you very much. Thank you. This case, agenda number six, number 129676, people versus the state of Illinois, which is Matthew Sloan, will be taken under advisory. Thank you both for your argument.